UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUINY REINOSO-DELACRUZ, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:19-cv-149 (SRU) |
| | : | |
| RUGGERIO, et al., | : | |
|     Defendants. | : | |

## REVIEW OF AMENDED COMPLAINT

On February 1, 2019, Luiny Reinoso-Delacruz, an inmate currently confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brought a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983against five Connecticut Department of Correction ("DOC") officials: Correction Officer Ruggerio, Correction Officer Grabowski, Unit Manager Salvatore, Warden Kenneth Butricks,[1] and Deputy Warden John/Jane Doe.[2]  Compl., Doc. No. 1. On April 18, 2019, Reinoso-Delacruz filed an amended complaint alleging additional facts against the defendants.  Am. Compl., Doc. No. 9.  For the following reasons, the amended complaint is dismissed in part.

    I.    Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

---

[1] Reinoso-Delacruz does not identify Warden Butricks by name, but lists "Warden of Manson Youth Institution that worked on Jan. 8, 2018."  Compl., Doc. No. 1 at ¶ 4.  The DOC website lists Kenneth Butricks as the warden of the Manson Youth Institution, the facility where Reinoso-Delacruz was confined during the events that gave rise to the instant complaint. Connecticut State Department of Correction, Manson Youth Institution, https://portal.ct.gov/DOC/Facility/Manson-YI.  Therefore, I will assume for purposes of this ruling that Reinoso-Delacruz intends to sue Warden Kenneth Butricks.

[2] According to the DOC website, there are two deputy wardens at the Manson Youth Institution:  Bryan Viger and Eulalia Garcia.  It is not clear from the complaint which of those individuals Reinoso-Delacruz intends to sue. Therefore, that defendant remains unidentified for purposes of this ruling.

28 U.S.C. § 1915A.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.     Factual Allegations

Reinoso-Delacruz alleges the following facts.  On January 8, 2018, at approximately 9:00 a.m., Reinoso-Delacruz was assaulted in his cell at the Manson Youth Institution ("MYI") by another inmate named Boyd.  Am. Compl., Doc. No. 9 at ¶ 1.  Boyd entered Reinoso-Delacruz's cell and hit him with a sock full of batteries wrapped around his hand.  *Id.* at ¶ 4.  The assault caused Reinoso-Delacruz to suffer a broken jaw for which he continues to receive physical therapy.  *Id.* at ¶ 5.  Prior to the assault, Reinoso-Delacruz had informed Correction Officers Grabowski and Ruggerio that Boyd had threatened him, but the officers dismissed his complaint, and Grabowski told him to "stop being a bitch."  *Id.* at ¶ 2.  Reinoso-Delacruz also had informed Unit Manager Salvatore about the threats, but Salvatore just said "okay" and walked away from Reinoso-Delacruz's cell.  *Id.* at ¶ 3.

On January 10, Reinoso-Delacruz was taken to the UConn Health Center where he underwent a surgical procedure.  Am. Compl., Doc. No. 9 at ¶ 6.  A metal plate was screwed into

his face to hold his jawbone in place. *Id.* When he returned to MYI, he was placed in the medical housing unit which is similar to a restrictive housing unit. *Id.* at ¶¶ 7, 10. There, he filed a grievance against MYI officials for failing to protect him from Boyd, but he never received a response from any of the officials. *Id.* at ¶ 7.

Several days later, Reinoso-Delacruz filed a request to be placed in protective custody, but he never received a response from MYI officials. Am. Compl., Doc. No. 9 at ¶ 8. The next day, he wrote to Warden Butricks and the Deputy Warden about the incident. *Id.* at ¶ 9. Neither official responded. *Id.* Days later, Reinoso-Delacruz was released back into general population at MYI. *See id.* at ¶ 10. While in general population, Unit Manager Salvatore "forced" him to sign a waiver stating that he cannot sue DOC officials if something happened to him during his "release back to the compound." *Id.* Salvatore told him that, if he did not sign the waiver, he would be confined in the medical housing unit. *Id.* Analysis

Reinoso-Delacruz claims that the defendants violated his Eighth Amendment protection against cruel and unusual punishment by failing to protect him from the assault by Boyd. Am. Compl., Doc. No. 9 at 4. He seeks damages against the defendants in their individual and official capacities. *Id.* at 2, 4. However, the Eleventh Amendment bars claims for damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159 (1985). Therefore, all claims against the defendants in their official capacities are dismissed. Reinoso-Delacruz may only obtain damages against the defendants in their individual capacities.

It is not clear from the complaint whether Reinoso-Delacruz was a prisoner or a pretrial detainee at the time of the alleged violation. State judicial records show that he was sentenced in state court on December 9, 2016 to eighteen months of imprisonment, followed by three years of probation. *State v. Reinoso-Delacruz*, No. D03D-CR15-0151915-S (Conn. Super. Ct. Dec. 9,

3

2016).  He was then arrested on new charges in 2017, which served as the basis for a violation of probation charge.  *Id.*; *State v. Reinoso-Delacruz*, No. D03D-CR18-0156998-S (Conn. Super. Ct. Feb. 28, 2018); *State v. Reinoso-Delacruz*, No. DBD-CR17-0155838-S (Conn. Super. Ct. Feb. 28, 2018).  He received a sentence of thirty months' imprisonment on February 28, 2018, shortly after he was assaulted by Boyd, for the probation violation and the new charges.  *State v. Reinoso-Delacruz*, No. D03D-CR15-0151915-S; *State v. Reinoso-Delacruz*, No. DBD-CR17-0155838-S.  Thus, at the time of the alleged assault, Reinoso-Delacruz was awaiting disposition of his probation violation case and the charges from 2017.

This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment.  *See Hill v. County of Montgomery*, 2018 WL 2417839, at *2 (N.D.N.Y. May 29, 2018) ("Whether to classify an individual detained for a suspected probation violation as a pretrial detainee or a convicted prisoner is an 'unresolved and difficult question.'") (quoting *Harry v. Suarez*, 2012 WL 2053533, at *2 n.3 (S.D.N.Y. June 4, 2012)).  The Prison Litigation Reform Act defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  If Reinoso-Delacruz was, indeed, a "prisoner" at the time of the alleged assault, then his claim would appropriately be analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (rights of sentenced prisoners considered under Eighth Amendment).  Conversely, if he was a pretrial detainee at the time of the alleged events, then his claim must be analyzed under the Fourteenth

Amendment's Due Process Clause. *See id.* (rights of pretrial detainees are considered under the Fourteenth Amendment).

In *Hill*, the district court ruled that the plaintiff's conditions of confinement claims were governed by the Fourteenth Amendment based on his assertions that (1) he was released from the detention facility prior to his probation revocation proceeding and (2) there was a clerical error regarding the expiration of his probation term. 2018 WL 2417839, at *2. Because the plaintiff had not yet been given a hearing on his violation of probation charge, the district court ruled that his status was more akin to that of a pretrial detainee, rather than a prisoner. *Id.* Although Reinoso-Delacruz was confined at MYI at all times during which the events giving rise to his complaint occurred, he was not found guilty of violating his probation until after the assault by Boyd. Therefore, for purposes of this ruling, I conclude that Reinoso-Delacruz was a pretrial detainee at the time of the alleged constitutional violation and analyze his claim under the Fourteenth Amendment.

To prevail on a claim that correction officials failed to protect him from harm or acted with deliberate indifference to his safety, a detainee

> must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the . . . detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Darnell*, 849 F.3d at 35.

Construed liberally, Reinoso-Delacruz has stated a plausible Fourteenth Amendment claim against Grabowski, Ruggerio, and Salvatore. He alleges that those defendants had dismissed his verbal complaints about the threats made by Boyd, and, thereafter, Boyd assaulted him. He also alleges that Salvatore forced him to sign a waiver and remain in general population at MYI after the assault. I will permit Reinoso-Delacruz's Fourteenth Amendment claim for

5

failure to protect from harm to proceed against Grabowki, Ruggerio, and Salvatore based on those allegations.[3]

Regarding the other defendants, however, Reinoso-Delacruz has failed to sufficiently allege their personal involvement in the incident involving Boyd. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, Reinoso-Delacruz does not allege any facts suggesting that Warden Butricks or the Deputy Warden ever became aware that he faced an excessive risk of harm. Reinoso-Delacruz alleges that he wrote letters to them <u>after</u> the assault and never received a response, but that allegation, alone, is insufficient to establish personal involvement. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (two letters sent to supervisor defendant and defendant's brief response do not demonstrate requisite personal involvement for section 1983 claim); *Lebron v. Semple*, 2018 WL 3733972, at *4 (D. Conn. Aug. 6, 2018) ("Courts have held that [a] failure to respond to a letter of complaint does not constitute the personal involvement necessary to maintain a section 1983 claim") (quoting *Richardson v. Department of Correction*, 2011 WL 710617, at *3 (S.D.N.Y. Feb. 28, 2011)); *Thorne v. Cuevas*, 2012 WL 1050056, at *6 (D. Conn. Mar. 28, 2012) (failure to respond to inmate request does not alone establish personal involvement).

---

[3] My decision to permit Reinoso-Delacruz's failure to protect claim to proceed against those defendants would be the same even if he was a "prisoner" at the time of the alleged violation and his claim was governed under the heightened Eighth Amendment standard. In order to prevail on an Eighth Amendment failure to protect claim, a prisoner must prove that he is "incarcerated under conditions posing a substantial risk of serious harm" and that the officials acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). That requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The officials must have disregarded an excessive risk to the prisoner's safety. *See id.* at 837. Construed liberally, the allegations at this stage are sufficient to show that Grabowski, Ruggerio, and Salvatore disregarded a substantial risk that Reinoso-Delacruz would be harmed.

Reinoso-Delacruz contends that Warden Butricks and the Deputy Warden "failed to properly train" their subordinate officers. Am. Compl., Doc. No. 9 at 5. A plaintiff who sues a supervisory official for monetary damages can show that the official was "personally involved" in the constitutional deprivation by alleging that the official was grossly negligent in managing subordinates who caused the unlawful condition or event. *Wright*, 21 F.3d at 501. However, there are no facts to support Reinoso-Delacruz's conclusion that either of those defendants failed to properly train Grabowski, Ruggerio, or Salvatore in the proper handling of inmate complaints about threats from other inmates. Therefore, the claims against Warden Butricks and the Deputy Warden are dismissed for failure to sufficiently allege personal involvement.

**ORDER**

(1) Reinoso-Delacruz's Fourteenth Amendment claim for failure to protect him from harm may proceed against Grabowski, Ruggerio, and Salvatore in their individual capacities for damages. The claims against the remaining defendants are dismissed. The clerk is directed to terminate the Warden and Deputy Warden as defendants to this action.

(2) The clerk shall verify the current work addresses for Grabowski, Ruggerio, and Salvatore with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (Doc. No. 9) to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall mail a courtesy copy of the amended complaint and this Order to the

DOC Office of Legal Affairs.

(4) The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Reinoso-Delacruz changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Reinoso-Delacruz must give notice of a new address even if he is incarcerated. Reinoso-Delacruz should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

So ordered.

Dated at Bridgeport, Connecticut, this 9th day of May 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge